UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAMES BLAYLOCK,

                Plaintiff,

v.

M. BURGESS et al.,

                Defendants.

_____/

Case No. 1:24-cv-593

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a pretrial detainee under 42 U.S.C. § 1983.  The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge.  (ECF No. 1, PageID.6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wriggleshorth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

2

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.    Factual Allegations

Plaintiff is currently incarcerated by the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  The events about which he complains occurred there.  Plaintiff sues the following ECF personnel in their official and personal capacities: Warden M. Burgess, Deputy Warden J. Clouse, Resident Unit Manager Unknown McCall, Correctional Officers Unknown Frank and Unknown Snay, and Unknown Party, referred to as the "designee signature on food loaf request if not Burgess or Clouse."  (Compl., ECF No. 1, PageID.2–3.)

Plaintiff alleges that on October 11, 2023, Defendant Snay requested that Plaintiff be placed on food loaf restriction because Plaintiff had used his food tray to obstruct the food tray slot in his cell door.  (*Id.*, PageID.4.)  That request was approved by either Defendant Burgess, Defendant Clouse, or Defendant Unknown Party on October 12, 2023.  (*Id.*)  According to Plaintiff, this was a false report because it was Ramadan and Plaintiff did not receive trays during this period.  (*Id.*)  Plaintiff filed a grievance about the issue.  (*Id.*)  He claims that the grievance response "adds confusion," because it stated that Plaintiff was placed on food loaf restriction for not taking his arm out of the slot.  (*Id.*)  Plaintiff admits that he put his arm in the slot, but argues that is "not a reason to be on food loaf[, and] protocol for that action is top slot restriction[, meaning that you are] fed from [the] bottom slot as you sit on your bunk."  (*Id.*)  Plaintiff contends that the placement on food loaf interfered with his

4

religious beliefs because he did not eat for three days "because of being fed food loaf not normal Ramadan meals." (*Id.*)

Plaintiff faults Defendants Burgess, Clouse, and Unknown Party for "approv[ing] a falsely written request [without] an investigation." (*Id.*)  Plaintiff spoke to Defendant McCall about the issue a day after he was placed on food loaf restriction. (*Id.*)  Plaintiff has not "heard from him since." (*Id.*)  Plaintiff faults Defendant McCall for failing to correct the issue. (*Id.*, PageID.5.)

Plaintiff goes on to allege that on October 11, 2023, he repeatedly asked Defendant Frank for his Ramadan bag. (*Id.*)  Defendant Frank told Plaintiff that he was "not a real Muslim because [Plaintiff is not] Arabic," and denied Plaintiff his bag. (*Id.*)  Plaintiff spoke to Defendant Snay, and Defendant Snay told Plaintiff that he was not "going against his partner." (*Id.*)  Plaintiff claims that his Ramadan bag was in the unit as of 6:30 p.m., but that he did not receive it until 9:00 p.m. (*Id.*)  Plaintiff last ate that day at 5:30 a.m., and he asserts that he went almost 16 hours without food that day. (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his First, Eighth, and Fourteenth Amendment rights.  The Court also construes Plaintiff's complaint to assert claims premised upon the handling of his grievance.  Plaintiff seeks unspecified injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.6.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.   Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly / Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.   First Amendment Claims

### 1.   Retaliation

Plaintiff suggests that Defendants placed him on food loaf restriction and gave him his Ramadan bag late in retaliation for Plaintiff exercising his First Amendment rights.  Plaintiff suggests that Defendants took these actions because Plaintiff was exercising his religious beliefs.  (Compl., ECF No. 1, PageID.5.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037

(6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Although practice of religious beliefs can certainly qualify as protected conduct, Plaintiff's complaint is devoid of facts from which the Court could infer that Defendants placed him on food loaf restriction because of those beliefs. Instead, Plaintiff freely admits that he had his arm in the food slot of his cell, obstructing its ability to close. This practice is commonly known as taking one's food slot hostage. An inmate takes his food slot "hostage" by preventing it from being closed, typically by placing his hand or arm in the slot. *See, e.g.*, *Earby v. Ray*, 47 F. App'x 744, 745 (6th Cir. 2002). It is against prison rules and a common form of prisoner misbehavior. *Annabel v. Armstrong*, No. 1:09-cv-796, 2011 WL 3878379, at *4 n.5 (W.D. Mich. Mar. 30, 2011), *report and recommendation adopted by* 2011 WL 3878385 (W.D. Mich. Aug. 31, 2011). "[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Thaddeus-X*, 175 F.3d at 395; *see also Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (concluding that prisoner's statement that a hearing officer was "a foul and corrupted bitch" was insulting, derogatory, and questioned her authority as well as the integrity of the proceeding was insolent and violated an MDOC policy directive and, thus, could not be protected conduct); *Caffey v. Maue*, 679 F. App'x 487 (7th Cir. 2017) (holding that an inmate's name-calling of guards (calling them unprofessional) was a challenge to the guards' authority that was not protected by the First Amendment). Because Plaintiff was placed on food loaf restriction in response to his misconduct, Plaintiff

8

cannot maintain a First Amendment retaliation claim against Defendants premised upon his placement on food loaf restriction.

Although Plaintiff's complaint sets forth that he was placed on food loaf restriction on October 11, 2023, Plaintiff also suggests that Defendants Frank and Snay retaliated against him for practicing his religious beliefs by not giving him his October 11, 2023, Ramadan bag until 9:00 p.m.  (Compl., ECF No. 1, PageID.5.)  Indeed, Plaintiff alleges that Defendant Frank told Plaintiff that he was not going to get the bag because he was not a real Muslim.  (*Id.*)

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  *Thaddeus-X*, 175 F.3d at 396.  The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

The Sixth Circuit has held that "the denial of a single meal . . . is a de minimus event that would not deter a prisoner of ordinary firmness from engaging in protected conduct."  *See Moore v. Liewert*, No. 22-2056, 2023 WL 8378827, at *3 (6th Cir. Aug. 16, 2023).  Here, Plaintiff was not completely denied a meal; instead, he received his evening Ramadan bag later than usual.  Because Plaintiff has failed to allege facts rising to the level of adverse action, he may not maintain his First Amendment

retaliation claims against Defendants Frank and Snay premised upon the late provision of the Ramadan bag.

In sum, all of Plaintiff's First Amendment retaliation claims against Defendants will be dismissed.

### 2. Free Exercise

Plaintiff suggests that Defendants violated his First Amendment free exercise rights by placing him on food loaf restriction during Ramadan. According to Plaintiff, he did not eat for three days because he was given food loaf instead of "normal Ramadan meals." (Compl., ECF No. 1, PageID.4.) Plaintiff also suggests that Defendants Frank and Snay violated his First Amendment free exercise rights by not giving him his October 11, 2023, evening Ramadan bag until 9:00 p.m. (*Id.*, PageID.5.)

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.* While "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that

10

his belief is sincerely held, and (3) Defendants' behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987).

At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has sufficiently alleged his sincerely held religious beliefs, and there is no doubt that observing Ramadan is a religious practice.  The next consideration is "whether the challenged practice of the prison officials infringes on the religious belief." *Kent*, 821 F.2d at 1224–25.  A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989).  A burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007) (citations omitted).

The facts alleged by Plaintiff do not permit the Court to infer that he suffered a substantial burden of his religious beliefs.  This Court has previously noted that "[a] single instance of [a] missing meal does not amount to a violation of the First Amendment." *See Watkins v. Simon*, No. 1:19-cv-838, 2019 WL 5704021, at *4 (W.D. Mich. Nov. 5, 2019).  Here, Plaintiff did not miss any meals; instead, he was placed on food loaf restriction for three days.  Although Plaintiff alleges that he did not eat because he did not receive "normal Ramadan meals," he fails to allege facts regarding what foods he asserts his religious beliefs and Ramadan require.  That is, Plaintiff

fails to allege any facts about what food he could or could not eat during Ramadan and fails to allege any facts about what food was in the food loaf that he received. Therefore, Plaintiff necessarily fails to allege any facts to suggest that the food loaf he received contained food he was not permitted to eat during Ramadan.  Likewise, it is clear that Defendants provided meals to Plaintiff during those days, albeit in the form of food loaf.  While the food loaf may have been distasteful to Plaintiff, Plaintiff alone made the choice not to eat.  Likewise, Plaintiff's complaint reflects that he ultimately received his October 11, 2023, evening Ramadan bag, albeit later than usual.  That instance also does not rise to the level of a substantial burden of Plaintiff's religious beliefs.  *See Watkins*, 2019 WL 5704021, at *4 (noting that missing one meal after the Ramadan fast, which required the inmate to fast "for a few hours longer," did not rise to the level of a substantial burden).

For the foregoing reasons, Plaintiff's First Amendment free exercise claims will be dismissed.

## B.    Eighth Amendment Claims

Plaintiff suggests that Defendants violated his Eighth Amendment rights in various ways.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The

deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety

13

may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.      Placement on Food Loaf and Late Ramadan Bag

Plaintiff suggests that his placement on food loaf and his receipt of a late Ramadan bag on October 11, 2023, violated his Eighth Amendment rights.

Prisoners must receive adequate nutrition to maintain normal health; however, the food need not be tasty or aesthetically pleasing. *See Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir. 1977).  With respect to Plaintiff's complaint about being placed on food loaf restriction, the Sixth Circuit has repeatedly held that a diet of food loaf does not violate the Eighth Amendment because nutritional and caloric requirements are met. *See, e.g., Griffis v. Gundy*, 47 F. App'x 327, 328 (6th Cir. 2002); *Payton-Bey v. Vidor*, No. 94-2472, 1995 WL 603241, at *1 (6th Cir. Oct. 12, 1995); *Hinton v. Doney*, No. 93-2050, 1994 WL 20225, at *2 (6th Cir. Jan. 26, 1994); *Boswell v. Meyers*, No. 89-2144, 1990 WL 109230, at *1 (6th Cir. Aug. 2, 1990). Although Plaintiff alleges that he did not eat for three days because he was given food loaf instead of "normal Ramadan meals," the decision not to eat was Plaintiff's decision, not a decision made by any of the named Defendants.   Accordingly, Plaintiff's Eighth Amendment claims regarding his placement on food loaf restriction will be dismissed.

Plaintiff also faults Defendants Frank and Snay for not giving him his Ramadan bag until 9:00 p.m. on October 11, 2023, when the bag was in the unit at 6:30 p.m. (Compl., ECF No. 1, PageID.5.)  Plaintiff contends that he last ate at 5:30 a.m. that day, and so he did not eat for 16 hours. (*Id.*)  However, the deprivation of a

few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered). Here, Plaintiff was not denied a meal; instead, he received his October 11, 2023, evening Ramadan bag later than usual. Such allegations simply do not rise to the level of an Eighth Amendment violation. *See Waring v. Meachum*, 175 F. Supp. 2d 230, 240–41 (D. Conn. 2001) (dismissing Eighth Amendment claim where inmate observing Ramadan received meals late, causing him to go almost 24 hours without food). Accordingly, Plaintiff's Eighth Amendment claims related to his late receipt of his October 11, 2023, evening Ramadan bag will be dismissed as well.

## 2. Verbal Harassment and False Report

Plaintiff contends that Defendant Frank violated his Eighth Amendment rights by using racial slurs against Plaintiff. (Compl., ECF No. 1, PageID.5.) Specifically, Plaintiff takes issue with Defendant Frank telling Plaintiff that he is not a real Muslim because he is not Arabic. (*Id.*) Plaintiff also suggests that Defendants violated his Eighth Amendment rights by writing and upholding a false report stating that Plaintiff had placed his tray in the food slot. (*Id.*, PageID.4.) However, while Defendant Frank's comment may have been unprofessional, "neither verbal harassment or threats nor the filing of a false misconduct report constitute punishment within the context of the Eighth Amendment." *Briggs v. Burke*, No. 1:13-

CV-1160, 2014 WL 204038, at *4 (W.D. Mich. Jan. 17, 2014) (citing *Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir.2001); *Williams v. Reynolds*, No. 98–2138, 1999 WL 1021856, at *1 (6th Cir. Nov.3, 1999); *Tillman v. Huss*, No. 1:13–cv–297, 2013 WL 4499228, at * 11 (W.D. Mich. Aug.19, 2013)).   Accordingly, any Eighth Amendment claims premised upon verbal harassment and an allegedly false report will be dismissed.

### C.    Fourteenth Amendment Claims

#### 1.    Due Process

Plaintiff suggests that his placement on food loaf violated his Fourteenth Amendment due process rights.  Plaintiff's exhibits also suggest that he received a class II misconduct for disobeying a direct order when he refused to take his arm out of the food slot.  (ECF No. 1-1, PageID.11.)  That report suggests that plaintiff waived his right to a class II hearing and received 10 days' loss of privileges.  (*Id.*)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).  The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995).  According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).  Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts.  The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id.* ¶ DDDD.

The Sixth Circuit has held that "[u]nder the *Sandin* standard, a due process claim based upon being fed food loaf is no longer viable." *Griffis*, 47 F. App'x at 327. Moreover, with respect to the class II misconduct for disobeying a direct order, the Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter*

*v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).  In any event, the 10 days' loss of privileges sanction involved the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities."  MDOC Policy Directive 03.03.105, Attach. E (eff. Apr. 18, 2022).  Such a sanction does not affect the duration of Plaintiff's sentence or impose an atypical and significant hardship on Plaintiff.  *See Ingram*, 94 F. App'x at 273; *Carter*, 69 F. App'x at 680.  Plaintiff, therefore, cannot maintain any intended procedural due process claims against Defendants premised upon his placement on food loaf restriction and the 10 days' loss of privileges he received as a result of the class II misconduct.

Moreover, to the extent that Plaintiff intended to raise Fourteenth Amendment substantive due process claims, as explained below, he fails to state such claims. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting

*United States v. Salerno*, 481 U.S. 739, 746 (1987)).  "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'"  *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).  Here, Plaintiff does not allege any facts showing the sort of egregious conduct that would support a substantive due process claim.  Accordingly, any intended Fourteenth Amendment substantive due process claims will also be dismissed.

### 2.    Equal Protection

Plaintiff suggests that Defendant Frank violated his Fourteenth Amendment equal protection rights by not giving Plaintiff his October 11, 2023, evening Ramadan bag until 9:00 p.m., when the bag had been in the unit as of 6:30 p.m.  (Compl., ECF No. 1, PageID.5.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals.  *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right," such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest."  *City of Cleburne*, 473 U.S. at 440.

19

To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  The threshold element of an equal protection claim is disparate treatment.  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).  Further, "'[s]imilarly situated' is a term of art—a comparator...must be similar in 'all relevant respects.'"  *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff fails to state an equal protection claim premised upon religious discrimination.  As an initial mater, while Plaintiff avers that Defendant Frank told him that he would not be receiving his Ramadan bag because Plaintiff was not a true Muslim because he was not Arabic, Plaintiff fails to identify any comparative prisoners.  Moreover, Plaintiff's complaint makes clear that he ultimately received his evening Ramadan bag, albeit at a later time than he would have preferred.  Indeed, besides Plaintiff's reference to his religion and his conclusory assertion that Defendant Frank's actions violated the equal protection clause, Plaintiff's complaint contains no facts or allegations to support his equal protection claim.  *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").  Instead, any allegations of discriminatory treatment are wholly conclusory.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at

678; *Twombly*, 550 U.S. at 555.   Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, Plaintiff's Fourteenth Amendment equal protection claim against Defendant Frank will be dismissed.

### D.    Handling of Grievances

The Court also construes Plaintiff's complaint to assert claims premised upon the handling of his grievance, as he suggests that Defendants Burgess, Clouse, and Unknown Party failed to conduct a full investigation into the food loaf issue.

As an initial matter, Plaintiff has no due process right to file a prison grievance.   The courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure.   *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).   Moreover, Michigan law does not create a liberty interest in the grievance procedure.   *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).   Thus, although Plaintiff disagreed with the response to his grievance and the upholding of his food loaf restriction, because Plaintiff has no

liberty interest in the grievance process—including the responses to grievances—none of the Defendants deprived Plaintiff of due process.

Furthermore, the Sixth Circuit has held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  The reason is that there must be active unconstitutional behavior.  Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance.  *Id.* Additionally, in unpublished decisions, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied, or responded to, a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998).  In light of the foregoing authority, Plaintiff cannot maintain his claims against Defendants Burgess, Clouse, and Unknown Party premised upon their response to Plaintiff's grievance and food loaf restriction.

Furthermore, "a claim based on an inadequate investigation fails to state a constitutional violation because private citizens have no constitutional or federal statutory right to compel the investigation of another person." *Miles v. Mitchell*, No. 3:18-CV-P116-CRS, 2018 WL 5929643, at *5 (W.D. Ky. Nov. 13, 2018) (citing, *inter*

*alia, Diamond v. Charles*, 476 U.S. 54, 64–65 (1986)); *see also Browder v. Parker*, No. 5:11CV-P29-R, 2011 WL 2379406, at *7 (W.D. Ky. Jun. 15, 2011) ("Private citizens, whether or not they are incarcerated, have no constitutional or federal statutory right to compel the investigation of another person." (citing *Diamond*, 476 U.S. at 64– 65; *White v. City of Toledo*, 217 F. Supp. 2d 838, 841 (N.D. Ohio 2002))).

Moreover, to the extent that Plaintiff intended to allege that Defendants violated his right to petition the government, this right is not violated by a failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond). Defendants' actions also did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a

grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

Accordingly, any intended First and Fourteenth Amendment claims regarding the handling of Plaintiff's grievance will be dismissed.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  June 24, 2024                          /s/ Phillip J. Green
                                               PHILLIP J. GREEN
                                               United States Magistrate Judge